(No. 5421

ILLINOIS RUAN TRANSPORT CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 7, 1973.*

JOHN P. LYNAUGH, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of the sum of $9,650.10 for damages arising out of an accident on August 16, 1965, when one of claimant's trucks overturned to avoid colliding with a State dump truck.

Thomas Plank testified as follows: He was operating claimant's tractor and trailer loaded with approximately 8,250 gallons of gasoline, proceeding east on Route 140, a two-lane highway east of Meadowbrook, Madison County, Illinois. It had been raining. He was coming off a hill or grade about 11:20 a.m. when he saw a State dump truck "sitting on the road" about two or three hundred feet ahead

and a car behind it blinking its taillights. He saw no warning signs or signals and no flagman. He put on his brakes and tried to stop. There was a car coming in the opposite direction, so he applied his brakes and the cab and trailer skidded off the road sideways and overturned. He estimated that he was going about 40 miles per hour but did not know what distance it would take to stop a 73,000 pound vehicle. The truck turned over about one and one-half times. He had been driving semi-trailer rigs for 22 years. He was familiar with the road. Vision is not as good in a truck as it is in a passenger vehicle because "you are higher up in a truck" and hanging trees block the vision, especially in the summertime.

Charles Richard Johnson testifed for the claimant as follows: He was driving west on Route 140 at the time of the accident. There is a hill and curve "coming on this bridge," a small concrete bridge. There was a State truck stopped right on the bridge. There was "quite a bit of traffic." Just as he came past the State truck he saw a tractor trailer coming down over the hill from the opposite direction. There were no flagmen and warning signals from the east, although there was a flagman standing beside the truck between the bridge and the truck, but he was not using any flags and there were no signs. It had been raining. There were two or three cars stopped behind the truck; he saw claimant's tractor trailer come over the hill. The driver tried to stop but lost control because it was so wet. Then the truck overturned one and one half times. The driver "came out the windshield and landed in the road." Men wearing orange highway jackets directed traffic after the accident, although not before. However, one of these men was standing between the truck and the bridge at the side of the truck before the accident. After the accident the State truck pulled off the road. The witness left the scene after taking the driver to a telephone where he called his company

which called the police. Mr. Johnson testified that he was not a very good judge of distance, but he thought the truck was about one hundred and fifty or two hundred feet away from him when he started losing control of the vehicle and he was about twenty feet away from it when it stopped. The driver was, according to the witness, about 300 or 400 feet away from the car stopped behind the truck when he started losing control. The driver had come down a hill and a curve and then the road was straight right before the bridge. In the opinion of the witness, there was no choice for the truck driver but to brake in order to avoid hitting the cars in back of the truck or the witness' car.

Albert Perkins McCormick testified as follows: He was traveling east on Route 140 at the time of the accident and saw the truck coming over the hill and around the curve in his rear view mirror. The witness was just coming to a stop and he flashed his taillights off and on. Perkins stopped because there was another car and a State truck stopped in front of him in the middle of the road. The State men were working on the bridge. He did not see any warning signals or flagman on the highway. The truck was about one hundred yards behind him when he started flashing his signals. He then saw the trailer truck brake, apparently to avoid hitting the witness; the trailer then started slipping to the right and overturned after hitting a stump. There were skid marks approximately 75 feet long on the road. The road was slippery after it rained. He left after the driver was taken to make a phone call. He did not see a flagman go out to control traffic after the accident. When the witness was approaching the place where the truck was stopped he was going about 30 miles per hour on account of the road conditions. The State truck did not have a flashing signal which was operating on top of it. The truck was traveling at about 40 miles per hour.

Dennis Klohr, a maintenance engineer for the Illinois Division of Highways testified on behalf of respondent as follows: He was not an eye witness to the accident, but conducted an investigation of the scene with reference to distances and sites on August 20, 1965. A truck approaching the bridge would have a full view of the bridge a distance of eight hundred feet from the work area on the bridge. The truck finally rested at 283 feet from the bridge. The approach to the area is a moderately steep grade for seven hundred feet and the bridge is visible about 800 feet away which is approximately halfway down the hill.

Dennis Franklin Weaver testified that on the date of the accident, he was working for the State of Illinois as a Section Leader and was engaged in filling pot holes in the pavement on Route 140 at the time of the accident. They had a yellow ton and a half truck equipped with a red light on top. The red light was working. One man, John Smith, of the approximately five-man crew was "flagging" behind the truck and another, Dewey Bail, was "flagging in front of the truck." "We had one-way traffic going" with two flagmen wearing orange vests. Each had paddles with "Stop" on one side and "Go" on the other side. Mr. Bail was about fifty to seventy-five feet in front of the truck and the other flagman, Mr. Smith, was twenty or twenty-five feet behind the truck. Smith had two cars stopped because Mr. Bail had cleared the traffic going west and Smith had two cars stopped waiting to go around the truck and go east. The witness did not observe the Ruan transport truck coming down the highway. He had finished the job and was in the truck when Mr. Bail told him there had been an accident in the back. The witness then pulled the truck off the highway and got out to see the overturned truck. It had been raining and the pavement was slick. There were no signs out saying "Road Work" or "Men Working."

Dewey Bail testified that he was working for the State as part of the maintenance crew at the scene of the accident. He was flagman at the time. Johnson was a flagman with him. Johnson was temporary and that was the first time he had worked with him. Johnson was behind the truck flagging and the witness was a couple of hundred yards east of the truck. They both had a paddle and a red flag. He was dressed with a highway jacket and was guiding one-way traffic; his traffic had cleared and he had let the last car go, getting ready to flag Johnson to let his cars come around at the time the truck came down the hill. He saw the truck approaching the area. Before he saw the truck he heard it as it approached the curve at the top of the hill. He stated: "it's a pretty sharp curve, then it straightens on down, and as I saw him I heard him hit the air brakes; that the truck went straight until it got to the foot of the hill, then it veered off onto the shoulder, hitting the stump and jackknifing." The signal light on the truck was operating at the time and the State truck is colored yellow. The truck was traveling at approximately forty to forty-five miles per hour; that he was not certain of the exact position of the men behind the truck because he was too far up to see them.

Before claimant may recover, it must prove by a preponderance of evidence that (1) claimant was free from contributory negligence; (2) that respondent was negligent; (3) that respondent's negligence was the proximate cause of claimant's injuries, and (4) damages.

Claimant contends that "it is the duty of the State of Illinois to maintain the highways within its jurisdiction and under its control in a reasonably safe condition or in the event a dangerous or unsafe condition exists, warn those persons upon the highway of said dangerous or unsafe condition."

Claimant further contends that Thomas Plank was operating the Illinois Ruan truck in a reasonable and safe manner as he approached the bridge on Route 140; that traffic was heavy and it had been raining; that when the State truck and two cars behind the truck came into view, Plank applied his brakes and overturned on the south side of the highway; that it was impossible for him to drive into the west-bound lane because he would have hit a car coming from the east; and that it was the duty of the State to erect warning signs at the approach to the crest of the hill and at the downward curve and post flagmen and a barricade warning of one-way traffic and men working.

Respondent argues that the sole proximate cause of claimant's accident was due to claimant's own negligence in operating a heavily loaded semi-trailer truck under rainy weather conditions in such a manner that he could not stop the vehicle safely within his range of vision so as to avoid collision with any vehicle stopped on the highway in front of him. The respondent further contends that the claimant has failed to maintain the burden of proof as to any negligence on the part of respondent, State of Illinois, and that the negligence of the State of Illinois, if any, was not the proximate cause of the damages sustained by claimant.

Claimant's reply to these arguments are as follows: None of the witnesses testified that Thomas Plank was driving the truck in a negligent or reckless manner; that he applied his brakes when he saw that it was impossible to stop without hitting the car in front of him or to have swerved in the opposite lane without hitting an oncoming car; that he was well within the speed limit.

Although there is evidence of negligence in the State's failure to post warning signals, it would appear that claimant has failed to prove by a preponderance of evidence that its driver was free from contributory negligence.

The record indicates that the truck driver would have had a full view of the bridge and the work area at a distance of 800 feet. Under such circumstances, the driver should have had his vehicle in sufficient control to safely bring it to a stop without skidding off the road.

Recovery is therefore denied.